UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division

R.G. ALLEN, ET AL.,

    Plaintiffs,

v.                                    CASE NO. 93-582-CIV-ORL-18

PRUDENTIAL SECURITIES INC.,

    Defendants.
_____/

## AFFIDAVIT OF WILLIAM J. FITZPATRICK

BEFORE ME, the undersigned authority duly authorized under the laws of this jurisdiction to administer oaths, personally appeared William J. Fitzpatrick, Esquire, who, being by me first duly sworn, deposes and says:

1. My name is William J. Fitzpatrick and I am over the age of 18 years.

2. I am Senior Vice President and General Counsel for the Securities Industry Association located at 120 Broadway, New York, New York 10271.

3. In 1977, I was Senior Vice President and Chief Legal Counsel of Loeb Rhodes & Co. and a member of the Securities Industry Association's Federal Regulations Committee. While a member of the Securities Industry Association Committee, I was appointed to be the security industry representative on the Securities Industry Conference on Arbitration ("SICA").

31

1342  6-14-89              Records and Reports— § 17(a)                    19,197

[¶ 26,155]     Records to Be Preserved by Certain Exchange
                         Members, Brokers and Dealers

   Reg. § 240.17a-4. (a) Every member, broker and dealer subject to § 240.17a-3 shall preserve for a period of not less than six years, the first two years in an easily accessible place, all records required to be made pursuant to paragraphs 1, 2, 3 and 5 of § 240.17a-3.

EXHIBIT "B" to
AFFIDAVIT

No. 21   11-68

**3711**

# CODE OF ARBITRATION PROCEDURE

*[Code adopted effective November 1, 1968.]*

¶ 3702          **Time Limitation Upon Submission**

Sec. 2.  No dispute, claim or controversy shall be eligible for submission to arbitration under this Code in any instance where two years shall have elapsed from the date of the securities transaction(s) giving rise to the dispute, claim or controversy in issue.

EXHIBIT "A" to
AFFIDAVIT

STATE OF <u>New York</u>     )
                            ) ss
COUNTY OF <u>New York</u>    )

    I hereby certify that on this <u>28th</u> day of <u>October</u>, 1993, personally appeared <u>William J. Fitzpatrick</u> for Prudential Securities Incorporated who is personally known to me ~~xxx produced xxxxxxxxxxxxxxxxxxxxxxxxx as identification~~ and he/~~she~~ acknowledged before me that he/~~she~~ executed the foregoing document as his/~~her~~ free act and deed as such officer, for the uses and purposes therein mentioned, and that said instrument is the act and deed of said corporation and that he/~~she~~ did/~~did not~~ take an oath.

    In Witness Whereof, I have hereunto set my hand and seal in the State and County aforesaid as of this <u>28th</u> day of <u>October</u>, 1993.

*Irene K. Sheff*
(Name of Notary)
Notary Public
State of New York
Commission No. 31-3627198
My Commission Expires:
    5/31/95

IRENE K. SHEFF
NOTARY PUBLIC, State of New York
No. 31-3627196
Qualified in New York County
Commission Expires May 31, 1993

-6-

11. There was, however, one situation where SICA decided to extend the eligibility provision beyond six years. To illustrate, if a customer filed a suit in a state or federal court against an exchange member shortly before the end of the six year period, by the time the court determined the arbitrability of the claim, the six year period would likely have expired. To avoid precluding the arbitration of such a claim, SICA adopted the provision reflected in §14(b) of the PHLX Code. This provision extends the eligibility period when <u>the parties</u> have submitted the dispute to a court of competent jurisdiction.

12. To the best of my recollection, there was no discussion of class actions during consideration of the provision reflected in Section 14(b) of the PHLX Code.

13. The six year eligibility rule was never intended to displace statutes of repose and limitation. Although the eligibility provision was intended to be treated as a "repose" extinguishing the claim from arbitration, the fact that a claim is eligible for arbitration would not preclude the arbitrators from determining that the claim was nevertheless barred by relevant state and federal statutes of limitation and repose.

AFFIANT SAYS NOTHING FURTHER.

*William J Fitzpatrick*
WILLIAM J. FITZPATRICK

eligibility provision to be identical to ¶ 3702 of the 1968 NASD Code. In short, SICA intended to provide eligibility for disputes that were not related to transactions at all as well as disputes that were traceable to a specific transaction. It did not, however, intend the uniform eligibility rule to change the dispute triggering event from the date of a securities transaction to the date the dispute was discovered.

9. In drafting the uniform eligibility provision, SICA also amended the length of time a dispute would be eligible for arbitration. Under ¶ 3702, the original eligibility period was two years from the date of the securities transaction. This period had been expanded prior to the enactment of the uniform arbitration code. Under the uniform code provision adopted as §11 of the PHLX Code, this eligibility period was extended to six years.

10. SICA chose the six year eligibility period to conform with the Securities and Exchange Commission ("S.E.C.") regulation, now § 240.17a-4(a), which requires exchange members to retain customer records for six years. A copy of this regulation has been attached to this affidavit as Exhibit "B". Because the purpose of the eligibility provision is to preclude stale claims, SICA concluded that any claim filed after the expiration of the document retention period was, by its very nature, stale. Thus, the six year limit acted as an absolute bar to any customer claim in arbitration.

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code in any instance where two years shall have elapsed from the date of the securities transaction(s) giving rise to the dispute, claim or controversy in issue.

7. The section changed over the years because, as explained below, disputes other than those based on transactions were intended to be eligible for arbitration as contemplated by this provision. Accordingly, while it remained SICA's intention to have an eligibility provision with the same effect as ¶ 3702 of the NASD Code, SICA recognized that there were other types of events, besides "securities transaction(s)", which could conceivably trigger an arbitrable dispute. For example, a customer could give a "sell" order that the customer alleged was not obeyed by the customer's broker. Or a broker might allegedly fail to pass on dividends paid to a customer's account. SICA considered these events to be events which should be subject to arbitration, but which would not be addressed under the language of ¶ 3702 since they did not involve a "securities transaction."

8. To address the eligibility of such claims, SICA elected to use language in the uniform arbitration code which defined the dispute triggering event as an "occurrence or event giving rise to the act or dispute, claim, or controversy." By doing so, SICA did not intend to alter the effect of ¶ 3702 with respect to disputes that could only exist if in fact a transaction had occurred and thus arose out of a "securities transaction." Indeed, with respect to securities transactions, SICA intended the uniform

4. In 1977, SICA had 14 members: a representative from each of the ten self-regulating organizations maintaining arbitration forums; three representatives from the public; and a representative from the Securities Industry Association. When I first became a SICA member, SICA's primary task was drafting a small claims procedure for the securities industry. When that task was completed in 1979, SICA began a review of the entire arbitration code with the goal of drafting a uniform arbitration code for the entire securities industry.

5. I make this affidavit based upon my experience as one of the fourteen SICA members responsible for drafting the eligibility portions of the uniform arbitration code adopted by every self-regulating organization in the securities industry, including the Philadelphia Stock Exchange (PHLX). As a SICA member I actively participated in the drafting of the uniform arbitration code, including those eligibility provisions adopted by the Philadelphia Stock Exchange Arbitration Code as §11 and §14(b).

6. When drafting the model for §11 of the PHLX Code, SICA had a single objective: to foreclose all stale claims from arbitration. In adopting the uniform provision, SICA intended to draft an eligibility provision which would have the same effect as the original language contained in ¶ 3702 of the 1968 NASD Code of Arbitration Procedure. A copy of this provision is attached to this affidavit as Exhibit "A". ¶ 3702 of the 1968 NASD Code provided:

-2-